**Roger TISCH, Appellant,**

v.

**DST SYSTEMS, INC., Respondent.**

**No. WD 73454.**

Missouri Court of Appeals, Western District.

April 3, 2012.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 1, 2012.

Application for Transfer Denied July 3, 2012.

Dennis E. Egan and Mark Buchanan, Kansas City, MO, for Appellant.

Brian J. Finucane, James R. Holland, II, and Gregory D. Ballew, Kansas City, MO, for Respondent.

Before Division II: GARY D. WITT, Presiding Judge, and JOSEPH M. ELLIS and MARK D. PFEIFFER, Judges.

MARK D. PFEIFFER, Judge.

Roger Tisch brought an action against his employer, DST Systems, Inc. ("DST"), for reverse gender discrimination, age discrimination, and retaliation in violation of section 213.010[1] et seq., the Missouri Human Rights Act ("MHRA"). The Circuit Court of Jackson County ("trial court") granted partial summary judgment to DST and a jury returned a verdict in favor of DST on the remaining discrimination claim. The trial court entered judgment on the jury verdict in favor of DST. Tisch appeals. We affirm.

### Facts and Procedural History[2]

The following is a summary of the uncontroverted material facts that were before the trial court prior to its ruling on DST's motion for partial summary judgment.

Through its information processing capabilities and computer software services and products, DST provides services to entities in the financial services industry, including mutual funds, investment managers, brokers, and financial planners. On March 1, 1996, DST hired Tisch at age 55 as a Staff Consultant at a salary of $77,500. In 1998, DST established a new department, the Project Office Department, and selected Tisch at age 58 to manage it. Tisch was given the title of Business Analyst Manager at a salary of $86,991, effective January 1, 1999.

In May 2002, DST's management team determined that the Project Office Department managed by Tisch was not as successful as they wanted it to be. DST eliminated the Department and Tisch's position of Business Analyst Manager, but Tisch remained employed by DST at his salary of $95,784. Tisch did not initiate a complaint—either internally (i.e., DST Human Resources) or externally (i.e., Missouri Commission on Human Rights—"MCHR"—or the Equal Employment Opportunity Commission—"EEOC")—when he was demoted from this managerial position. When DST considered salaried em-

---

1. All statutory references are to RSMo 2000, as updated through the 2006 cumulative supplement.

2. We view the facts in the light most favorable to Tisch because we are required to determine "whether fact issues exist that preclude the grant of summary judgment." *Hill v. Ford Motor Co.*, 277 S.W.3d 659, 662 n. 3 (Mo. banc 2009) (citing *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993)).

ployees for annual raises at the end of 2002, it granted Tisch a raise to $97,363, effective December 1, 2002.

In March 2003, DST changed Tisch's job title to Business Analyst Administrator and transferred him to the Operations Department. Effective August 1, 2003, DST changed Tisch's job title to Senior Business Analyst, a position that had a salary range of $48,705 to $71,625, but did not change his salary immediately. Instead, DST set a deadline of October 15, 2003, for Tisch to find another employment opportunity in the organization that would allow him to avoid a reduction in salary. Over the next two months, Tisch tried unsuccessfully to locate other jobs at DST or its local subsidiary.

Effective October 16, 2003, DST reduced Tisch's salary to $60,005. After his salary was reduced, Tisch made an internal complaint to DST's Human Resources Department. Thereafter, the parties engaged in settlement negotiations regarding Tisch's employment and salary. Effective October 16, 2004, DST reclassified Tisch to Senior Software Developer and raised his salary to $68,200, retroactive to January 1, 2004. In total, after the October 2003 salary reduction, DST subsequently awarded Tisch nine salary increases to raise his salary to $88,385. Tisch did not initiate a discrimination complaint at any time in 2003 or 2004 with the MCHR.

In 2005, Tisch interviewed and was accepted for a temporary assignment in DST's Enterprise Command Center ("ECC") but that position offer was later retracted by DST and DST filled the position with a female under the age of forty, who was transferred out of the DST Operations Department where Tisch was working. Tisch did not initiate a discrimination complaint in 2005 with the MCHR over DST's transfer denial to the ECC.

In March 2006, Tisch applied for promotion to the position of Principal Architect in the Network Services Area. Four DST employees had expressed interest in the Principal Architect position. In April 2006, DST selected a thirty-eight-year-old male DST employee for the position instead of Tisch.

On April 21, 2006, Tisch filed a Charge of Discrimination with the MCHR[3] against DST. The MCHR complaint specifically referenced the denial of the Principal Architect position as an act of alleged discrimination and retaliation. Tisch's complaint did *not* specifically mention the denial of transfer to ECC nor did Tisch's complaint check the "continuing action" box. On May 14, 2007, the MCHR issued a Notice of Right to Sue.

On May 21, 2007, Tisch was denied a promotion to Senior Software Engineer at DST Output, a subsidiary of DST. Tisch believed he was denied the promotion because of his age or because he had filed the MCHR complaint or both.

On July 31, 2007, Tisch filed suit under the MHRA, alleging employment discrimination based on gender, age, and retaliation. DST moved for summary judgment on the four events forming the basis for Tisch's claims on the following argued grounds: (i) the 2003 demotion and the 2005 ECC transfer denial were both outside of the 180–day period for filing an administrative charge of discrimination (§ 213.075.1), and were both outside of the two-year statute of limitations for filing suit (§ 213.111.1); (ii) the 2006 refusal to promote Tisch to the Principal Architect position, while a timely discrimination charge and lawsuit, failed to present any evidence of discrimination or retaliation;

**3.** Tisch also filed a complaint with the EEOC, which is not at issue on this appeal.

and (iii) the May 21, 2007 refusal to promote Tisch to the position of Senior Software Engineer was not the subject of the MHRA charge and occurred after the May 14, 2007 MCHR Right to Sue notice. The trial court granted the motion in part—finding that the 2003 demotion claim and the 2005 transfer denial claim fell outside the 180–day period for filing a charge; rejecting Tisch's "continuing violation doctrine" argument; and finding that, as Tisch conceded, the 2007 refusal to promote claim was not a claim upon which he could recover—and denied the motion in part as to the 2006 refusal to promote claim.

Tisch filed a motion to reconsider the summary judgment order, which the trial court denied.

Thereafter, on September 30, 2010, four days before trial, Tisch filed a motion for leave to file a first amended petition to add a count for hostile work environment based on age. After a hearing, the trial court denied the motion.

A jury trial was conducted October 4 through October 18, 2010, on Tisch's claims of age discrimination or retaliation related to DST's 2006 promotion of an applicant other than Tisch to the position of Principal Architect, and the jury returned its verdict in favor of DST. The trial court entered judgment in accordance with the jury's verdict.

Tisch timely filed his Motion for New Trial and to Amend Judgment, which the trial court denied.

Tisch timely filed this appeal.

### Point I—Summary Judgment Challenge

Appellate review of the trial court's order granting summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993).

Summary judgment is appropriate where the moving party has demonstrated, on the basis of material facts about which there is no genuine dispute, a right to judgment as a matter of law. *Id.* at 380. We review the record in the light most favorable to the party against whom summary judgment was entered and accord the nonmovant the benefit of all reasonable inferences from the record. *Id.* at 376. The movant bears the burden of establishing a legal right to judgment and the absence of any genuine issue as to any material fact required to support that right to judgment. *Id.* at 378.

A defending party may establish a right to summary judgment as a matter of law by any one of three means: (i) showing facts that negate any one of the elements of the claimant's claim; (ii) showing "that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements"; or (iii) showing "that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense." *Id.* at 381. When the movant has made a prima facie showing, the non-movant's only recourse is to show by affidavit, depositions, answers to interrogatories, or admissions on file, that one or more of the material facts are genuinely disputed. *Id.*

### Analysis

In his first Point, Tisch asserts that the trial court erred in granting partial summary judgment to DST as to discriminatory acts occurring outside the 180–day period for filing an administrative charge under section 213.075.1 and the two-year statute of limitations for filing a civil action in section 213.111.1 because genuine issues of material fact existed as to wheth-

er these claims were timely under the "continuing violation" doctrine. Tisch suggests that DST's acts of demoting him in 2003 and refusing to transfer him to the ECC in 2005 were not discrete acts of discrimination but were part of a series of interrelated discriminatory acts.

Tisch brought his claims under two sections of the MHRA.

Section 213.055.1 prohibits employers from engaging in unlawful employment practices, including discriminating against an individual because of age by "fail[ing] or refus[ing] to hire ... any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment" or by "limit[ing], segregate[ing], or classify[ing] ... employees or ... employment applicants in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee[.]"

Section 213.070(2) describes additional unlawful discriminatory practices, including "retaliat[ing] or discriminat[ing] in any manner against any other person because such person has ... filed a complaint ... pursuant to this chapter."

The MHRA defines "discrimination" to include "any unfair treatment based on race, color, religion, national origin, ancestry, sex, age as it relates to employment, disability, or familial status as it relates to housing." § 213.010(5).

 Section 213.075 requires any person claiming to be aggrieved by an unlawful discriminatory practice to file a written verified complaint with the MCHR within 180 days of the alleged act of discrimination. However, the timely filing requirement is subject to the principles of waiver, estoppel, and equitable tolling, including the "continuing violation" theory exception. *Pollock v. Wetterau Food Distribution Group*, 11 S.W.3d 754, 763 (Mo.App. E.D. 1999). Conversely, these equitable doctrines "are to be applied sparingly" in determining whether a charge of discrimination was timely filed. *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002).[4]

 Under the "continuing violation" theory, a plaintiff may pursue a claim for an event that occurred prior to the 180–day statute of limitations for filing a claim of discrimination with the MCHR *if* the plaintiff can demonstrate that the event is "part of an ongoing practice or pattern of discrimination" by the employer. *Pollock*, 11 S.W.3d at 763. To take advantage of the "continuing violation" theory, a plaintiff must satisfy a two-part test: (i) "demonstrate that at least one act occurred within the filing period"; and (ii) show that the current claim of discrimination is part of "a series of interrelated events, rather than isolated or sporadic acts of intentional discrimination." *Id.* If the plaintiff proves both, then "the 180–day filing period becomes irrelevant ... [and][h]e may then offer evidence of the entire continuing violation." *Id.*

### Part I—Did at least one act of discrimination occur within the 180–day MCHR filing period?

 In its Order granting summary judgment in part and denying in part, the

---

4. When reviewing cases under the MHRA, we are guided by both Missouri law and any federal employment discrimination (i.e., Title VII) case law that is consistent with Missouri law. *Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 818 (Mo. banc 2007). However, while the MHRA and Title VII are coextensive, they are not identical and " '[i]f the wording in the MHRA is clear and unambiguous, then federal case law which is contrary to the plain meaning of the MHRA is not binding.' " *Id.* at 819 (quoting *Brady v. Curators of Univ. of Mo.*, 213 S.W.3d 101, 113 (Mo.App. E.D.2006)).

trial court concluded that genuine issues of material fact existed that precluded a grant of summary judgment on Tisch's claim related to DST's refusal to promote him to the position of Principal Architect in April 2006, which event occurred within 180 days of the date Tisch filed his charge with the MCHR. DST asserts that because this claim was fully litigated in a two-week trial that resulted in a verdict in favor of DST, this unappealed final judgment on Tisch's sole timely filed claim precludes application of the continuing violation theory.

We disagree with DST's premise based upon our standard of review. In our *de novo* review of the trial court's decision to grant summary judgment, we apply the same criteria as the trial court in determining whether summary judgment was proper—basing our decision on the law and on the pleadings and record submitted to the trial court. *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 452 (Mo. banc 2011) (citing *ITT*, 854 S.W.2d at 376; Rule 74.04).

Rule 74.04(c)(1) states in pertinent part that a statement of uncontroverted material facts must be attached to the motion for summary judgment and must set out material facts as to which the movant claims there is no genuine issue "with specific references to the pleadings, discovery, exhibits or affidavits." Likewise, Rule 74.04(c)(2) provides that the adverse party's response must support each denial with specific references to the discovery, exhibits, or affidavits that demonstrate specific facts showing that there is a genuine issue for trial. "If the trial court is limited in its review to the documents set out with specificity in the motion for summary judgment and the response thereto, then so is this court." *Mothershead v. Greenbriar Country Club, Inc.*, 994 S.W.2d 80, 85 (Mo.App. E.D.1999); *see also Rob-*

*inson v. Mo. State Highway & Transp. Comm'n*, 24 S.W.3d 67, 81 n. 5 (Mo.App. W.D.2000) ("A trial court grants or denies motions for summary judgment on the basis of what is contained in the motions and, as an appellate court, we are confined to considering the same information.").

Thus, we are not authorized to factor the subsequent jury verdict into our review. Hence, as to the first element of the "continuing violation" theory—that at least one act occurred within the filing period—Tisch sufficiently alleged that DST refused to promote him to the position of Principal Architect in April 2006, which was within 180 days of April 21, 2006, the date he filed his charge of discrimination with the MCHR.

## Part II—Was the current claim of discrimination part of a series of interrelated events or one instance of multiple discrete acts of alleged discrimination?

█ The trial court summarily found Tisch's reliance on the continuing violation doctrine unavailing as a means of avoiding summary judgment on his claims regarding his 2003 salary reduction and DST's 2005 refusal to give him a temporary assignment because both claims "clearly fall outside the 180 day period for filing a charge."

█ In determining the timeliness of a claim, at one end of the spectrum are events that can be "identified individually as significant events." *Pollock*, 11 S.W.3d at 763 (internal quotation omitted). The U.S. Supreme Court has termed such events "discrete acts" that occur at a particular moment in time. *Morgan*, 536 U.S. at 110, 122 S.Ct. 2061. The Supreme Court has characterized "termination, *failure to promote, denial of transfer*, or refusal to hire" as easily identifiable "[d]iscrete acts." *Id.* at 114, 122 S.Ct. 2061

(emphasis added). "Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice[,]' ... [which] are not actionable if time barred, *even when they are related to acts alleged in timely filed charges. Each discrete discriminatory act starts a new clock for filing charges alleging that act.*" *Id.* at 113, 114, 122 S.Ct. 2061 (emphasis added). However, prior acts may be used as background evidence in support of a timely claim.[5] *Id.* at 113, 122 S.Ct. 2061.

On the other end of the spectrum are "continuing violations" that consist of "repeated conduct" extending over a period of time. *Id.* at 115, 122 S.Ct. 2061. One example is a hostile work environment claim. In *Morgan,* the Supreme Court explained that hostile work environment claims differ from discrete act claims in that by "[t]heir very nature [they] involve[ ] repeated conduct," where liability is based on the "cumulative effects of individual acts." *Id.*[6] A continuing violation is established when the plaintiff shows "a series of closely-related, similar events that occurred within the same general time period and stemmed from the same source" that "continued into the limitations period." *Pollock,* 11 S.W.3d at 763 ("As in most claims of hostile work environment harassment, the discriminatory acts were not always of a nature that could be identified individually as significant events; instead, the day-to-day harassment was primarily significant, both as a legal and as a practical matter, in its cumulative effect." (internal quotation omitted)).[7] *Pollock* guides our analysis as to whether alleged conduct establishes a continuing violation:

5. We note that at trial the trial court did, in fact, permit Tisch to present evidence of prior alleged discriminatory acts as background evidence in support of Tisch's timely filed 2006 discrimination claim.

6. Tisch suggests that, in interpreting the MHRA, Missouri courts have not adopted the "discrete act" versus "course of conduct" dichotomy found in federal employment discrimination case law and urges us to ignore *National Railroad·Passenger Corp. v. Morgan,* 536 U.S. 101, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002), at least as to its "discrete act" analysis. We disagree and note that under MAI 31.24 [2005 New] (6th ed.2002), to succeed on an employment discrimination claim under the MHRA, the plaintiff must first prove that the defendant engaged in *an alleged discriminatory act,* or engaged in *a course of conduct or harassment constituting discrimination,* within the scope of section 213.055. Further, the Eastern District of our court in *Alhalabi v. Missouri Department of Natural Resources,* 300 S.W.3d 518, 526 (Mo. App. E.D.2009), has stated: "Unlike in cases where there was a *discrete act of discrimination,* Alhalabi's Charge of Discrimination describes pervasive racially discriminatory conduct." (Emphasis added.) Clearly, then, Missouri law recognizes that discrimination

under the MHRA can be either a distinct, "discrete act" or a "course of conduct" and thus we conclude that the U.S. Supreme Court's precedent in *Morgan* is a persuasive guideline on these topics.

7. *See also Alhalabi,* 300 S.W.3d at 526 (hostile work environment claim based on pervasive racially discriminatory conduct: "Racial discrimination creates a hostile work environment when discriminatory conduct either creates an intimidating, hostile, or offensive work environment or has the purpose or effect of unreasonably interfering with an individual's work performance. In most claims of hostile work environment harassment, the discriminatory acts are not of a nature that can be identified individually as significant events; instead, the day-to-day harassment is primarily significant, both as a legal and as a practical matter, in its cumulative effect." (citation omitted)); *Rowe v. Hussmann Corp.,* 381 F.3d 775, 782 (8th Cir.2004) ("This principle, although understood as an equitable exception to the limitations period in Missouri, is consistent with *Morgan*'s view of Title VII's statutory language. In each, the component acts must be sufficiently related to form a single practice, at least part of which 'continued into the limitations period.'" (quoting *Pollock,* 11 S.W.3d at 763)).

if a "claim is based upon a series of close-ly-related, similar events that occurred within the same general time period and stemmed from the same source, it is in the nature of a continuing violation." *Id. Pollock* advises us to look for "day-to-day" discriminatory events that occur on a regular basis, which events may not be significant individually but establish a continuing violation due to their cumulative effect. *Id.* Through this lens, we agree with the trial court's finding that Tisch's claim fails as a matter of law.

While Tisch alleged that he suffered from numerous discriminatory and retaliatory acts, each of the acts he ultimately complains of are individually significant "discrete" events:[8] (1) In 2003, Tisch was demoted and his salary was reduced by thirty-eight percent; this event was so individually significant to Tisch that he filed an internal complaint with the DST Human Resources Department and negotiated a salary compromise with DST; (2) in 2005, Tisch was denied a transfer within the company structure in favor of a younger female co-employee, an event (transfer denial) that has been identified by the Supreme Court as a discrete act of purported employment discrimination. *Morgan,* 536 U.S. at 110, 122 S.Ct. 2061; (3) in 2006, Tisch was denied a promotion within the employment structure of DST in favor of a much younger male co-employee, another event (failure to promote) that the Supreme Court has identified as a discrete

act of purported employment discrimination. *Id.* "[D]iscrete acts that fall within the statutory time period do not make timely acts that fall outside the time period." *Id.* at 112, 122 S.Ct. 2061. Instead, only those acts that occurred 180 days before April 21, 2006, the date Tisch filed his MCHR discrimination charge, are actionable. *Id.* at 113, 122 S.Ct. 2061. Thus, the only claim that Tisch timely filed was the 2006 failure to promote claim and the timely 2006 claim cannot make timely the separate discrete discriminatory acts alleged to have occurred in 2003 and 2005. "All prior discrete discriminatory acts are untimely filed and no longer actionable." *Id.* at 115, 122 S.Ct. 2061.

Point I is denied.

## Point II—Refusal to Submit Proposed Jury Instructions

■ We review the trial court's refusal to give a proffered jury instruction *de novo,* evaluating whether the instructions were supported by the evidence and the law. *Marion v. Marcus,* 199 S.W.3d 887, 893 (Mo.App. W.D.2006). We reverse only if we determine that the error resulted in prejudice, Rule 70.02(c), and "materially affect[ed] the merits of the action," Rule 84.13(b).

■ However, we review the denial of a motion for new trial pursuant to Rule 78.01 for abuse of discretion. *Kansas City*

---

8. Unlike *Wallingsford v. City of Maplewood,* 287 S.W.3d 682, 687 (Mo. banc 2009), the record of uncontroverted material facts on the topic of the events of alleged discriminatory acts has been fully developed and there is no need to remand for Rule 74.04 development of such a record. Thus, Tisch's reliance on *Wallingsford* is misplaced. Since Tisch relies so heavily on *Wallingsford,* we do however note that, in *Wallingsford,* our Missouri Supreme Court, in dictum, cited to a post-*Morgan* federal case discussing the topic of the

MHRA's 180–day filing deadline and exceptions thereto. *Id.* at 685 (citing to *Rowe v. Hussmann Corporation,* 381 F.3d 775, 782 (8th Cir.2004)). Notably, *Rowe* cites to *Morgan* as the threshold case on the topic of "timeliness under title VII," 381 F.3d at 779, and expressly notes that the MHRA and Missouri case precedent interpreting the analysis of when equitable exceptions apply to extend the MHRA limitations period are "consistent with *Morgan*'s view of Title VII's statutory language." *Id.* at 782.

*v. Keene Corp.,* 855 S.W.2d 360, 372 (Mo. banc 1993).

## Analysis

Tisch asserts that the trial court erred in refusing to submit his proposed verdict directing jury instructions D (age discrimination) and E (retaliation). In each instruction, the first paragraph read: "First, defendant took negative employment actions against plaintiff *including* denying him work assignments, failing to appoint him to a position in the Enterprise Command Center, and denying him interviews for open positions[.]" (Emphasis added.) According to Tisch, the instructions were modifications of MAI 31.24 [2005 New] (Verdict Directing—Employment Discrimination—Missouri Human Rights Act) (6th ed. Supp. Jan. 2011), and were based on *Brady v. Curators of the University of Missouri,* 213 S.W.3d 101 (Mo.App. E.D. 2006).[9]

An instruction "shall be given or refused by the court according to the law and the evidence in the case." Rule 70.02(a). "Whenever Missouri Approved Instructions contains an instruction applicable in a particular case ... such instruction shall be given to the exclusion of any other instructions on the same subject." Rule 70.02(b). Instructions are to submit "the law governing the case" to the jury. Rule 70.02(f). The litmus test of a not-in-MAI instruction is "whether the instruction follows applicable substantive law by submitting the ultimate facts required to sustain a verdict." *Seitz v. Lemay Bank & Trust Co.,* 959 S.W.2d 458, 462 (Mo. banc 1998) (internal quotation omitted).

First, we note that Tisch's proposed verdict directors, Instructions D and E, constituted impermissible "roving commissions." " 'A "roving commission" occurs when an instruction assumes a disputed fact or submits an abstract legal question that allows the jury "to roam freely through the evidence and choose any facts which suit[ ] its fancy or its perception of logic" to impose liability.' " *Scanwell Freight Express STL, Inc. v. Chan,* 162 S.W.3d 477, 482 (Mo. banc 2005) (quoting *Seitz,* 959 S.W.2d at 463). The *Scanwell* Court found that the defendant's verdict director was fatally defective because the jury was not limited to the allegations relating to actionable evidence because those allegations were preceded by the word *"including,"* which is a word of enlargement rather than limitation, thereby making actionable the aggregate of all of the defendant's conduct rather than limiting the allegations to actionable conduct. *Id.* The court concluded that the jury was thereby given a roving commission. *Id.* We find that Tisch's proffered instructions suffer from the same infirmity: by using the word *"including,"* the instruction impermissibly enlarged the scope of conduct for the jury's consideration beyond that which was actionable.

Second, the jury instructions used by the trial court did not misstate the law. "To require the giving of a non-MAI instruction, a party must prove that the MAI instructions submitted to the jury misstate the law." *McBryde v. Ritenour Sch. Dist.,* 207 S.W.3d 162, 168 (Mo.App. E.D.2006) (citing *City of Kansas City v. Habelitz,* 857

9. The Notes on Use for MAI 31.24 provide that "[i]f the evidence in the case demonstrates a course of conduct ... constituting discrimination on any grounds contained in § 213.055, RSMo, then paragraph First of this instruction may be appropriately modified." MAI 31.24 [2005 New] Notes on Use (2007 Revision) (6th ed. Supp. Jan. 2011). However, we note that there is no "negative employment action" language referenced in *Brady v. Curators of University of Missouri,* 213 S.W.3d 101 (Mo.App. E.D.2006), and the instructions submitted to the jury in that case were not reproduced in the *Brady* opinion.

S.W.2d 299, 303 (Mo.App. W.D.1993)). The trial court properly determined on summary judgment that the alleged discriminatory and retaliatory acts that occurred before the 180-day limitation period were separate and discrete acts that were time-barred and not actionable, but Tisch's proposed instructions referenced alleged discriminatory and retaliatory acts that occurred before the 180-day limitation period. There was nothing to submit to the jury on the prior untimely discrete discriminatory acts because they were no longer actionable. *Morgan*, 536 U.S. at 115, 122 S.Ct. 2061. Therefore, the only issue that remained to be adjudicated at the jury trial was the timely failure to promote claim. In this case, MAI 31.24 was clearly applicable; DST's Instructions No. 7 and 10, verdict directing instructions for the timely 2006 failure to promote claim based on age discrimination and retaliation respectively, mirrored the instruction; the trial court was correct in giving them without modification; and the trial court certainly did not abuse its discretion in denying Tisch's Motion for New Trial on the basis of claimed instructional error.

Point II is denied.

## Point III—Trial Court's Denial of Motion to Amend Pleadings

■ Rule 55.33(a) governs the amendment of pleadings. Whether to allow the amendment of a petition to add additional counts is at the discretion of the trial court, and we will not disturb its decision "absent an obvious and palpable abuse of discretion." *Kenley v. J.E. Jones Constr. Co.*, 870 S.W.2d 494, 498 (Mo.App. E.D. 1994). "Judicial discretion is abused when the court's ruling is clearly against the logic of the circumstances presented to the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate con-

sideration." *Moore v. Firstar Bank*, 96 S.W.3d 898, 903–04 (Mo.App. S.D.2003) (citing *Nelson v. Waxman*, 9 S.W.3d 601, 604 (Mo. banc 2000)).

■ "In reviewing the trial court's decision, we look to see whether justice is furthered or subverted by the course taken." *Kenley*, 870 S.W.2d at 498. Factors to be considered in determining whether the trial court erred in denying leave to amend include: (1) the hardship to the moving party if leave to amend is denied; (2) the moving party's reasons for omitting the matter from the original pleading; and (3) any injustice that would result to the nonmoving party were leave to amend granted. *Baker v. Kansas City*, 671 S.W.2d 325, 329 (Mo.App. W.D.1984). We may also consider the timeliness of the application. *Zubres Radiology v. Providers Ins. Consultants*, 276 S.W.3d 335, 342 (Mo.App. W.D.2009).

### Analysis

In his third Point, Tisch asserts that the trial court erred in overruling his motion to amend his petition to add a claim for hostile work environment based on age discrimination and retaliation.

### Hardship to Moving Party

■ The proposed additional count for harassment was essentially a new method of contesting the same issues that were ruled on in DST's favor on summary judgment. *Kenley*, 870 S.W.2d at 498. The harassment count was a different legal theory to encompass the same accusations made in Tisch's original petition. When two of the alleged events of discrimination forming the basis for Tisch's claims were summarily excluded because the alleged discriminatory acts were beyond the 180-day limitation period, Tisch attempted to inject those same alleged events of dis-

crimination in the form of a harassment count.

■ Though there is an obvious hardship to Tisch as a result of the trial court's ruling, the trial court did not abuse its discretion in concluding that justice would not have been furthered by allowing Tisch to amend his petition. *See id.* Tisch plainly could have included this count in his original petition as an alternative claim. *See id.* However, he did not ask for leave to amend until all but one of the alleged instances of discrimination supporting his original counts had been disposed of via summary judgment. *See id.* The only reason Tisch's counsel gave at the pre-trial hearing as a reason the harassment count was not included in the original petition was that it was not pleaded. "Our liberal amendment rules are not meant to be employed as a stratagem of litigation. Rather, the purpose of the grant of an amendment is to allow a party to assert a matter unknown or neglected from inadvertence at the time of the original pleading." *Id.* (citation omitted).

### Reason for Omission

Tisch noted that he filed the motion after the trial court overruled his motion for reconsideration of its grant of partial summary judgment to DST out of "an abundance of caution." In his motion, Tisch acknowledged that the alleged instances of discrimination that formed the basis for the hostile work environment claim were included in his original petition—that his petition "laid out *five years* of alleged misconduct based on age and/or gender, starting in 2002, and continuing into 2007. Although the legal elements of a harassment claim were not pleaded, the necessary *facts* were."

■ The recognized function of the amendment rule is to enable a party to present evidence that was overlooked or unknown at the time that the original pleading was filed without changing the original cause of action. *Baker,* 671 S.W.2d at 329. There is no abuse of discretion in denying the amended pleadings of parties who fail to show the pleadings include any facts that were unknown when the original pleading was filed. *Moore,* 96 S.W.3d at 904. The trial court, in explaining the reasons for its denial of Tisch's motion, noted that "the facts have remained fairly constant during the three years this case has been on file" and that this was not a case where evidence was unknown or overlooked at the time the original petition was filed.

### Timeliness of the Application and Injustice to Nonmoving Party

The trial court's ruling is further supported by the fact that at the time Tisch filed his motion for leave to amend his petition on September 30, 2010, a firm trial date had already been set for October 4, 2010. DST had litigated the case for three years with no suggestion by Tisch of a harassment claim; to change the nature of the claim on the eve of trial would require DST to change its trial strategy the weekend before trial. The trial court acknowledged that granting the motion would result in a hardship to DST as the amendment would be a "change in . . . the legal effect of the factual allegations in the case."

Under these circumstances, "allow[ing] the amendment would impliedly condone the adding of additional counts at the last minute, after previous contentions failed." *Kenley,* 870 S.W.2d at 498. Accordingly, the trial court did not abuse its discretion in denying Tisch's motion for leave to amend his petition.

Point III is denied.

## Conclusion

The judgment of the trial court is affirmed.

GARY D. WITT, Presiding Judge, and JOSEPH M. ELLIS, Judge, concur.