

## Missouri Court of Appeals
### Southern District

#### In Division

CHRISTINE BELL-KAPLAN, )
)
    Appellant/Cross-Respondent, )   Nos.   SD37656 and SD37668
)           CONSOLIDATED
    v. )
)   **Filed: April 25, 2025**
MARY C. SCHWARZE, et al, )
)
    Respondents/Cross-Appellants. )

### APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

Honorable Michael Randazzo, Judge

### AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Appellant Christine Bell-Kaplan[1] ("Kaplan") appeals the circuit court's judgment, after a bench trial, in favor of Respondents (collectively "Schwarzes") in an action for declaratory judgment and to quiet title to two tracts of land near Cuba, Missouri. For the reasons set forth below, we affirm the trial court's judgment on each point of Kaplan's appeal, but reverse and remand on the Schwarzes' cross-appeal.

---

[1] In her First Amended Petition, Notice of Appeal, and various other pleadings, Plaintiff/Appellant's first name is listed as "Christine." In her brief and reply brief, her first name is listed as "Christina." For consistency, we will use the name "Christine."

## Background

This litigation arises from contested ownership of two parcels of land, one of which was formerly owned by Ruth Reisert, and the other was formerly owned by Henrietta Schwarze.[2] Ruth and Henrietta each deeded their respective parcels to both Ruth and Henrietta, as joint tenants with right of survivorship. Kaplan is the niece of Ruth; Respondents are nieces and nephews of Henrietta. On March 23, 2001, Henrietta executed a durable power of attorney appointing Ruth as her attorney-in-fact regarding sale, transfer, or conveyance of Henrietta's property, the deeds and documents related thereto, and for payment of taxes and insurance. Under the terms of the document, in the event Ruth could not serve as attorney-in-fact, the power of attorney would transfer to Kaplan. On June 21, 2002, Ruth and Henrietta, as joint tenants, executed a beneficiary deed conveying the parcel previously owned solely by Ruth to Kaplan upon the death of the survivor of Ruth and Henrietta. On April 25, 2011, Ruth and Henrietta, as joint tenants, executed a beneficiary deed conveying the parcel previously owned solely by Henrietta to Kaplan upon the death of the survivor of Ruth and Henrietta.

Ruth died on May 4, 2015, which caused Kaplan to become Henrietta's attorney-in-fact. On June 16, 2015, Henrietta executed a durable power of attorney appointing her niece and nephew, Barbara Datesh and Martin Schwarze, as her attorneys-in-fact and revoked Kaplan's power of attorney. On August 17, 2015, Henrietta executed two warranty deeds conveying both parcels to herself and specifically revoking the 2002 and 2011 beneficiary deeds to Kaplan for both parcels. On September 12, 2015, Martin Schwarze, acting as Henrietta's attorney-in-fact,

---

[2] Due to the fact that multiple parties and one decedent share the surname Schwarze, we refer to decedents Henrietta Schwarze and Ruth Reisert by their first names. No disrespect is intended.

2

executed two beneficiary deeds conveying both parcels to Henrietta's nine nieces and nephews. Henrietta died on September 22, 2015.

Kaplan filed suit in Crawford County seeking declaratory judgment and to quiet title to the two tracts. Kaplan alleged that Henrietta lacked the mental capacity to understand and knowingly execute the June 16, 2015, designation of Barbara Datesh and Martin Schwarze as her attorneys-in-fact and revocation of Kaplan's power of attorney, rendering those documents void *ab initio*. Kaplan also asserted that, due to Henrietta's diminished mental state, she did not have the capacity to understand the nature and effect of the general warranty deeds signed on August 17, 2015. Kaplan claimed that Henrietta's incapacity rendered the warranty deeds void. Kaplan claimed that the beneficiary deeds executed by Martin Schwarze on September 12, 2015, were void because Martin "was acting under a void or voidable power of attorney[.]" Kaplan sought a declaratory judgment providing that, due to Henrietta's lack of capacity, the power of attorney and warranty deeds were void, thus the property reverted to Kaplan under the prior beneficiary deed.

A bench trial was held in March 2022. Kaplan introduced medical records and the opinion of a medical expert who based her opinion on a review of Henrietta's medical records. Kaplan contended that this evidence demonstrated Henrietta was incapacitated with dementia prior to May 2015.

The Schwarzes introduced medical records, the testimony of Henrietta's attorney in Rolla who was present when Henrietta executed the power of attorney on June 16, 2015, Henrietta's treating physician, and Dr. Martin Schwarze, Henrietta's nephew, who coordinated her medical care in the summer of 2015.

3

The trial court also heard extensive testimony from those who knew Henrietta. For Plaintiff, Kaplan testified, as did Henrietta's neighbor, who interacted with her on a regular basis. Both Kaplan and the neighbor testified that Henrietta suffered from significant dementia and had great difficulty caring for herself. For the Schwarzes, some of Henrietta's nieces and one nephew testified that Henrietta recognized family members, knew and understood her situation and surroundings, and expressed her desire to give her power of attorney to Barbara and Martin and her desire to deed her property to her nieces and nephews upon her death.

The trial court entered its order and judgment on April 25, 2022, stating:

> The Court finds that the testimony presented by Defendants to be more credible than the testimony presented by Plaintiff. In particular, the Court finds that the testimony, conclusions[,] and opinions of [attorney] and [treating physician], who are not parties or retained experts, and who were present with Henrietta in person during the time in question, were more credible than the opinion of [retained expert], who never examined or even met Henrietta, and who testified that she disagreed with the opinion of [treating physician], who was Henrietta's primary physician for several years.

> Plaintiff has not met her burden of proof to the "clear, cogent[,] and convincing" standard required by the law in order to set aside the beneficiary deeds and the general warranty deeds described in the First Amended Petition.

The trial court entered judgment in favor of the Schwarzes and against Kaplan on both counts of the petition; ordered that the Schwarzes "shall remain vested with title to the Property;" ordered that "[Kaplan], and any other party claiming by, through[,] or under [Kaplan], shall have no interest in the property;" and taxed costs to Kaplan.

On May 2, 2022, the Schwarzes filed a Taxing Memorandum requesting that $2,823.06 be taxed as costs against Kaplan for depositions and preparation of transcripts. Kaplan filed two post-trial motions: (1) a Motion for New Trial filed on May 24, 2022, and (2) a Motion to Set Aside Order for Costs filed on May 26, 2022. After a hearing, the trial court denied Kaplan's

4

Motion for New Trial and granted Kaplan's Motion to Set Aside Order for Costs.

Kaplan raises five points on appeal:

I.      The trial court erred in finding Henrietta was competent to execute the deeds because the finding was against the weight of the evidence.

II.     The trial court erred in finding Henrietta was competent to execute the deeds because the finding was not supported by substantial evidence.

III.    The trial court misapplied the law in granting title to the Schwarzes because Martin Schwarze was not authorized to execute a beneficiary deed naming himself and Barbara Datesh as beneficiaries.

IV.     The trial court "abused its discretion" in denying Kaplan's motion to file a second amended petition.

V.      The trial court erred in finding that Kaplan failed to meet her burden of proof by clear, cogent, and convincing evidence because substantial evidence failed to establish Henrietta's capacity to execute the durable power of attorney on June 16, 2015.

The Schwarzes filed a cross-appeal challenging the trial court's granting of Kaplan's motion to set aside its previously entered order which taxed costs against Kaplan.

**Legal Principles**

"A suit to have a deed declared void invokes the most extraordinary power of equity." *Hahn v. Tanksley*, 317 S.W.3d 145, 153 (Mo.App. 2010) (quoting *Lee v. Hiler*, 141 S.W.3d 517, 523 (Mo.App. 2004)). "Consequently, a party seeking cancellation of a deed bears the burden of establishing by clear, cogent, and convincing evidence the basis for exercising such power." *Id.*,

317 S.W.3d at 153-54 (quoting **Lee**, 141 S.W.3d at 523). When "the basis for setting aside a deed is the grantor's alleged lack of mental capacity, [t]he burden is upon those who seek to have the deed set aside to establish that, at the time of its execution, the grantor lacked sufficient mental capacity." **Hahn**, 317 S.W.3d at 154 (alteration in original) (quoting **Est. of Helmich v. O'Toole**, 731 S.W.2d 474, 478 (Mo.App. 1987)).

> The grantor's mental capacity on the date of execution may be demonstrated with evidence of the grantor's condition before and after the execution. The issue to be determined is whether the grantor had the mental capacity at the time of execution of the deeds sufficient to understand the nature of the transaction, the extent of [her] property[,] and the ability to recognize the objects of [her] bounty. Where the grantor's conveyance is to a blood relative, courts are more reluctant to declare such a conveyance as an unnatural disposition of the grantor's property. Instances of illness, imperfect memory, forgetfulness, physical and intellectual weaknesses associated with old age, and mental confusion are generally not sufficient evidence to invalidate a deed.

**Hahn**, 317 S.W.3d at 154 (citations and internal punctuation omitted).

Standard of Review

We will affirm the trial court's judgment in a court-tried case "unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law." **Ivie v. Smith**, 439 S.W.3d 189, 198-99 (Mo. banc 2014) (citing **Murphy v. Carron**, 536 S.W.2d 30, 32 (Mo. banc 1976)).

In reviewing challenges that a judgment is not based upon substantial evidence, "we view the evidence and the reasonable inferences drawn from the evidence in the light most favorable to the judgment, disregard all evidence and inferences contrary to the judgment, and defer to the trial court's superior position to make credibility determinations." **Houston v. Crider**, 317 S.W.3d 178, 186 (Mo.App. 2010). "[A] trial court is free to believe or disbelieve all, part, or none of the testimony of any witness." **Id.** (quoting **Lueckenotte v. Lueckenotte**, 34 S.W.3d 387, 394

6

(Mo. banc 2001)). "[R]eliance upon evidence and inferences contrary to the judgment is irrelevant and immaterial to an appellant's point and argument challenging a factual proposition necessary to sustain the judgment as being not supported by substantial evidence." **Houston**, 317 S.W.3d at 186. Stated another way, "no contrary evidence need be considered on a substantial-evidence challenge, regardless of . . . the burden of proof at trial[.]" **Ivie**, 439 S.W.3d at 200.

> A not-supported-by-substantial-evidence challenge requires completion of three sequential steps:
>
> (1)    [I]dentify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2)    [I]dentify all of the favorable evidence in the record supporting the existence of that proposition; and,
>
> (3)    [D]emonstrate why that favorable evidence, when considered along with the reasonable inferences drawn from that evidence, does not have probative force upon the proposition such that the trier of fact could not reasonably decide the existence of the proposition.

**Houston**, 317 S.W.3d at 187.

We evaluate challenges that the judgment is against the weight of the evidence similarly, but we consider evidence contrary to the judgment.

> [A]n against-the-weight-of-the-evidence challenge presupposes the threshold issue of the existence of substantial evidence supporting a proposition necessary to sustain a judgment, but, nevertheless, challenges the probative value of that evidence to induce belief in that proposition when viewed in the context of the entirety of the evidence before the trier of fact. Although consideration of probative value necessarily involves some consideration of evidence contrary to the judgment, we nevertheless defer to the trial court as the finder of fact in our determination as to whether that judgment is against the weight of the evidence.

**Id.** at 186 (citation and internal punctuation omitted). "[W]eight of the evidence refers to weight in probative value, not quantity or the amount of evidence. The weight of evidence is not

7

determined by mathematics, but on its effect in inducing belief." *Id.* (quoting *Gifford v. Geosling*, 951 S.W.2d 641, 643 (Mo.App. 1997)). "An against-the-weight-of-the-evidence challenge 'is not an opportunity for an appellant to receive a new factual determination from a different court.'" *Int. of E.M.F.*, 671 S.W.3d 866, 870 (Mo.App. 2023) (other citations omitted).

> [A]n against-the-weight-of-the-evidence challenge requires completion of four sequential steps:
>
> (1) [I]dentify a challenged factual proposition, the existence of which is necessary to sustain the judgment;
>
> (2) [I]dentify all of the favorable evidence in the record supporting the existence of that proposition;
>
> (3) [I]dentify the evidence in the record contrary to the belief of that proposition, resolving all conflicts in testimony in accordance with the trial court's credibility determinations, whether explicit or implicit; and,
>
> (4) [D]emonstrate why the favorable evidence, along with the reasonable inferences drawn from that evidence, is so lacking in probative value, when considered in the context of the totality of the evidence, that it fails to induce belief in that proposition.

*Houston*, 317 S.W.3d at 187.

## Discussion

### Point I

Regarding Point I, Kaplan fails to establish the sequential steps necessary for an against-the-weight-of-the-evidence challenge. "[A]dherence to [*Houston's*] analytical framework is mandatory . . . because it reflects the underlying criteria necessary for a successful challenge—the absence of any such criteria, even without a court-formulated sequence, dooms an appellant's challenge." *Est. of Collins by & through Collins v. Collins*, 648 S.W.3d 871, 878 (Mo.App. 2022) (alterations in original) (quoting *Robinson v Loxcreen Co.*, 571 S.W.3d 247, 251

8

(Mo.App. 2019)). Kaplan stumbles at step 2 of the sequential steps outlined in *Houston*. Kaplan states the sequential analytical steps, but fails to follow them in her argument. She omits any facts supportive of the trial court's judgment, which is required at step 2. While an against-the-weight-of-the-evidence challenge allows for discussion of facts in the record not supporting the trial court's judgment, step 3 requires that "all conflicts in testimony" be resolved "in accordance with the trial court's credibility determinations[.]" *Houston*, 317 S.W.3d at 187. Kaplan attempts to undermine the testimony the trial court found most credible. Such assertions have no part in our review of against-the-weight-of-the-evidence challenges. We must defer wholly to the credibility determinations of the trial court. *J.A.R. v. D.G.R.*, 426 S.W.3d 624, 627 (Mo. banc 2014). "[T]he circuit court is free to disbelieve any, all, or none of the evidence, and it is not the reviewing appellate court's role to re-evaluate the evidence through its own perspective." *Id.* Moreover, excluding favorable evidence in the record renders Kaplan's arguments "analytically useless and provide[s] no support" for her challenge. *Int. of Z.Y.M.B.*, 663 S.W.3d 869, 874-75 (Mo.App. 2023) (citations omitted). Accordingly, Kaplan's Point I "never makes it out of the starting gate." *Turner v. Jordan*, 655 S.W.3d 791, 795 (Mo.App. 2022) (quoting *In re Halverson ex rel. Sumners*, 362 S.W.3d 443, 451 (Mo.App. 2012)). Point I is denied.

Points II and V

In both of Kaplan's substantial-evidence challenges (Points II and V), Kaplan fundamentally misstates the law. For ease of analysis, we take these points together. As a plaintiff seeking to set aside deeds, it was Kaplan's burden to prove her case by clear, cogent, and convincing evidence. *Robertson v. Robertson*, 15 S.W.3d 407, 411 (Mo.App. 2000). Because it was Kaplan's burden to prove the elements required to set aside the warranty and beneficiary

9

deeds, no evidence is required to support a judgment against her. ***Taylor v. Taylor***, 585 S.W.3d 390, 395 (Mo.App. 2019). Kaplan's challenges in Points II and V are, thus, nonsensical.

Points II and V are denied.

Point III

Kaplan argues that the trial court erred in misapplying Missouri law in that Martin Schwarze did not have legal authority to execute beneficiary deeds naming himself and Barbara Datesh as beneficiaries because § 404.710, governing powers of attorney with general powers, prohibits it.[3] Kaplan failed to preserve this claim for appeal. Rule 84.04(e) dictates that "[f]or each claim of error, the argument shall also include a concise statement describing whether the error was preserved for appellate review; if so, how it was preserved; and the applicable standard of review."[4] Kaplan's argument in Point III contains no such preservation statement. Furthermore, we have reviewed the operable First Amended Petition and Kaplan's motion for new trial. Neither of these filings contain an argument that Martin was not authorized to execute the beneficiary deeds, nor does either make an argument regarding § 404.710. It comes as no surprise, then, that the trial court did not specifically address § 404.710 in its order and judgment.[5]

"An issue that was never presented to or decided by the trial court is not preserved for appellate review." ***State ex rel Nixon v. Am. Tobacco Co.***, 34 S.W.3d 122, 129 (Mo. banc 2000). "[I]t simply is not the role of the court of appeals or [the Supreme Court of Missouri] to grant

---

[3] Unless otherwise indicated, all statutory citations are to RSMo (2016).
[4] Unless otherwise indicated, rule references are to Missouri Court Rules (2022).
[5] Kaplan attempted to raise the § 404.710 argument in her proposed Second Amended Petition, which the trial court denied leave to file. Thus, the First Amended Petition, which did not contain a § 404.710 argument, was the operative petition in the trial court.

relief on arguments that were not presented to or decided by the trial court. This rule abides regardless of the merits of the argument." ***Barkley v. McKeever Enters., Inc.***, 456 S.W.3d 829, 839 (Mo. banc 2015). "Appellate courts are merely courts of review for trial errors, and there can be no review of a matter which has not been presented to or expressly decided by the trial court." ***Williams v. St. Charles Auto Mart, Inc.***, 690 S.W.3d 495, 500-01 (Mo.App. 2024) (quoting ***Barkley***, 456 S.W.3d at 839). "[I]n order to properly raise an issue on appeal, the allegations of error must be based upon the theory voiced in the objection at trial and a [party on appeal] cannot expand or change on appeal the objection as made." ***Hale v. Burlington-N. & Santa Fe Ry. Co.***, 638 S.W.3d 49, 60 (Mo.App. 2021) (citation and internal punctuation omitted). "Claims of error that are not preserved are subject to dismissal." ***Williams***, 690 S.W.3d at 501 (citing ***Meadowfresh Sols. USA, LLC v. Maple Grove Farms, LLC***, 586 S.W.3d 329, 343-44 (Mo.App. 2019)). Accordingly, Point III is denied.

Point IV

Kaplan argues in Point IV that the trial court abused its discretion by denying her motion for leave to file a second amended petition. Kaplan filed her original petition on October 13, 2015. She filed a motion for leave to file her first amended petition on July 17, 2019, which the trial court granted. She filed her motion for leave to file her second amended petition on December 6, 2021, which the trial court heard without a record and denied in a brief docket entry: "Motion for leave to File 2nd Amended Petition – overruled and denied. Cause remains for trial."

"Whether to allow the amendment of a petition to add additional counts is at the discretion of the trial court, and we will not disturb its decision 'absent an obvious and palpable

11

abuse of discretion.'" ***Tisch v. DST Sys., Inc.***, 368 S.W.3d 245, 257 (Mo. App. 2012) (quoting

***Kenley v. J.E. Jones Constr. Co.***, 870 S.W.2d 494, 498 (Mo.App. 1994)).   A court abuses its

discretion when "the court's ruling is clearly against the logic of the circumstances presented to

the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a

lack of careful, deliberate consideration."  ***Tisch***, 368 S.W.3d at 257 (quoting ***Moore v. Firstar***

***Bank***, 96 S.W.3d 898, 903–04 (Mo.App. 2003)).

Kaplan could file her second amended pleading only if the trial court granted her leave to

do so.  Rule 55.33(a).  Such "leave shall be freely given when justice so requires."  ***Ben Brower***

***Prop. Co., LLC v. Evella, LLC***, 554 S.W.3d 504, 511 (Mo.App. 2018) (quoting Rule 55.33(a)).  The

right to amend a pleading, however, is not absolute.  ***Brower***, 554 S.W.3d at 511.  "In reviewing

the trial court's decision, we look to see whether justice is furthered or subverted by the course

taken."  ***Id.*** (quoting ***Tisch***, 368 S.W.3d at 257).  The following factors should be considered in

deciding whether to grant leave to amend pleadings:

(1) hardship to the moving party if leave is not granted;
(2) reasons for failure to include any new matter in earlier pleadings;
(3) injustice resulting to the party opposing the motion, should it be granted; and
(4) timeliness of the application.

***Brower***, 554 S.W.3d at 511.

Applying the factors to this case, we find no abuse of discretion.  Although the first factor

arguably favors Kaplan, in that she was unable to pursue two newly asserted legal claims, she

created this potential hardship.  The recognized purpose of permitting the amendment of

pleadings is to allow the presentation of evidence that was overlooked or unknown when the

original pleading was filed without changing the original cause of action.  ***Tisch***, 368 S.W.3d at

258.  "There is no abuse of discretion in denying the amended pleadings of parties who fail to

show the pleadings include any facts that were unknown when the original pleading was filed." *Id.* The facts upon which Kaplan's new claims are based substantially appear in her first amended petition, thus she could have sought leave to plead the new claims at least as early as July 17, 2019. Furthermore, even if new information justifying the new claims did become available to Kaplan, as she asserts in her motion for leave to file the second amended petition, she acknowledges that information was available to her in July, 2021. She does not account for the delay between acquiring the purportedly new information and filing her motion for leave to file a second amended petition in December, some five months later. Under similar circumstances, the *Moore* court found no abuse of discretion. *Moore*, 96 S.W.3d at 904.

The remaining three factors strongly favor Schwarzes. Kaplan gave no significant reason for her failure to include the new claims in earlier pleadings, although the facts upon which they rely were substantially included in earlier pleadings. Her application was untimely, as the pleaded facts had been available since either July of 2021 or, even worse, July 2019. Furthermore, the case was set for trial in March 2022. Trial of the case already had been continued six times, with most of the continuances attributable to Kaplan. Schwarzes, the parties opposing the motion for leave to file second amended petition, would have suffered the injustice of facing two new legal claims with trial quickly approaching after years of preparation and discovery on different legal theories.

The denial of Kaplan's motion to amend her pleadings was not "clearly against the logic of the circumstances [and] so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration." *Brower*, 554 S.W.3d at 511 (quoting *Moore*, 96 S.W.3d at 904). The trial court did not subvert justice by denying Kaplan leave to file her

13

second amended petition.  *Id.*  The trial court did not abuse it discretion.  *Id.*

Point IV is denied.

**Schwarzes' Cross Appeal**

"Awarding costs and expenses is within the sound discretion of the trial court and should not be reversed absent a showing that the trial court abused its discretion."  ***Trimble v. Pracna***, 167 S.W.3d 706, 716 (Mo. banc 2005).

> In other words, the trial court possesses the discretion to award (or to refuse to award) costs in a judgment.  A trial court abuses its discretion if an award of costs in a judgment was against the logic of the circumstances and so arbitrary and unreasonable as to shock one's sense of justice.

***Riggs v. State Dep't of Soc. Servs.***, 473 S.W.3d 177, 182 (Mo.App. 2015) (citation and internal punctuation omitted).  "If a judgment awards costs or expressly refuses to award costs in a manner that is inconsistent with the law, it is axiomatic that the trial court has abused its discretion."  *Id.*

The Schwarzes were the prevailing party according to the trial court's judgment, and under Missouri law, they were entitled to recover costs from Kaplan.  *See* § 514.060 ("In all civil actions, or proceedings of any kind, the party prevailing shall recover his costs against the other party, except in those cases in which a different provision is made by law."); Rule 77.01 ("In civil actions, the party prevailing shall recover his costs against the other party, unless otherwise provided in these rules or by law.").  Thus, the trial court's judgment taxing costs to Kaplan was consistent with the prevailing-party rule.  The trial court, however, after hearing oral argument

from Kaplan that the Schwarzes should not be awarded costs,[6] reversed its judgment and ordered that costs not presented prior to the close of evidence were not payable to the Schwarzes. As the revocation of the award of costs was inconsistent with Missouri law, it was an abuse of discretion and requires reversal.

At the same time, a challenge to the calculation of the costs is not ripe for our review. *Riggs*, 473 S.W.3d at 184-85. "There are two separate and distinct considerations when it comes to costs. Whether the award was proper and whether the calculation and taxation of costs was erroneous." *Curators of Univ. of Mo. v. Suppes*, 583 S.W.3d 49, 57 (Mo.App. 2019).

The Clerk of Court is vested with the ministerial duty of taxing costs. *Solberg v. Graven*, 174 S.W.3d 695, 700-01 (Mo.App. 2005); *see also* § 514.260 ("The clerk shall tax and subscribe all bills of costs arising in any cause or proceedings instituted or adjudged in the court of which he is the clerk, agreeably to fees which shall, for the time being, be allowed by law, and shall in no case allow any item or charge, unless the service for which it was made was actually performed in the cause."). "[T]he trial court has no role to play in the initial taxation of statutory court costs that are definite in amount." *Solberg*, 174 S.W.3d at 701. After costs are taxed by the clerk of court, "any party may file a motion to retax costs so the trial court can review the clerk's bill of costs." *Id.*; *see also* § 514.270 ("Any person aggrieved by the taxation of a bill of costs may, upon application, have the same retaxed by the court in which the action or proceeding was had, and in such retaxation all errors shall be corrected by the court; and if the party aggrieved shall have paid any unlawful charge, by reason of the first taxation, the clerk shall

---

[6] Kaplan argued vaguely, and without citation to any legal source, that the Schwarzes' Taxing Memorandum was improper because it must have been presented prior to the close of the evidence. Neither party has shown, nor have we independently found, any support for such an assertion.

15

pay the costs of retaxation, and also to the party aggrieved the amount which he may have paid by reason of the allowing of such unlawful charge.").

Until the clerk of court has taxed statutory costs, "a party's bill of costs 'is merely an unsolicited gratuitous proposal.'" *Riggs*, 473 S.W.3d at 185 (quoting *Montoya v. A-1 Mufflers, Inc.*, 331 S.W.3d 702, 704 (Mo.App. 2011)). After the clerk completes the ministerial duty to tax costs, then the opposing party may ask the court to review the taxed costs under the statute or pursuant to Rule 77.05.[7] Prior to this appeal, the Clerk of Court had not yet taxed the costs to Kaplan from the Schwarzes' memorandum. Thus, Kaplan's motion to set aside order for costs was premature, and to the extent that the trial court's order was intended to be a review of whether the calculation of the costs was erroneous, that order is not ripe for appeal. *Suppes*, 583 S.W.3d at 57.

In sum, in regard to the five points of Kaplan's appeal, the judgment of the trial court is affirmed. With regard to the issue of costs raised in the cross-appeal filed by the Schwarzes, we reverse the denial of Schwarzes' costs and remand for further proceedings in the trial court consistent with this opinion.

JACK A. L. GOODMAN, J. – OPINION AUTHOR

DON E. BURRELL, J. – CONCURS

BECKY J.WEST, J. – CONCURS

---

[7] "Any party, on motion, may have a bill of costs reviewed by the court in which the civil action was heard."