

# Missouri Court of Appeals
## Southern District
### Division One

MICHAEL SHEFFIELD,           )
                                           )

    Plaintiff-Appellant,       )

                                           )

vs.                             )      No. SD35952

                                         )

GREG MATLOCK, HUSCH       )      FILED: November 13, 2019
BLACKWELL LP, CORY L. COLLINS,  )
and SHELLY ROSENFELDER,    )

                                         )

    Defendants-Respondents.   )

### APPEAL FROM THE CIRCUIT COURT OF GREENE COUNTY

Honorable Michael O'Brien Hendrickson

AFFIRMED IN PART; REVERSED AND REMANDED IN PART

Michael Sheffield ("Appellant") appeals the trial court's judgment dismissing his claims against Greg Matlock, Husch Blackwell, L.P. ("Husch"), Cory Collins, and Shelly Rosenfelder (all four collectively "Respondents" and Husch, Collins, and Rosenfelder sometimes collectively "Respondent Attorneys"). Appellant argues: (1) the trial court erred in dismissing his claims against Respondents based on claim preclusion because Respondents were not parties to Greene County Circuit Court case number 1531-AC05819-01 ("Prior Case"); (2) the trial court erred in declaring that the withdrawal of his "[Rule] 52.11 Motion" in Prior Case was ineffective; (3) the trial court erred in

1

dismissing his claims against Respondents for lack of standing and failure to state a claim; (4) the trial court erred when it ruled Respondent Attorneys were immune from claims that they assisted Matlock in violating the Foreclosure Consulting Act ("FCA")[1]; and (5) the trial court erred in denying Appellant leave to amend because it "allow[s] criminals to evade justice." Finding no merit in Appellant's fourth and fifth points against Respondent Attorneys and that the resolution of those two points is dispositive of this appeal as to them, we affirm the trial court's judgment dismissing Appellant's claim in count two of his petition against Respondent Attorneys. Because Appellant has standing under section 407.943 to bring his FCA violation claim against Matlock as alleged in count one of his petition and Matlock's res judicata (claim preclusion) affirmative defense asserted in his motion to dismiss is not established by the record on appeal, we reverse the trial court's judgment as to Appellant's count one claim against Matlock and remand the case back to the trial court for further proceedings.

<u>**Allegations in Appellant's Petition and Procedural Background**</u>

Appellant's petition alleges the following. In 2013, Appellant hired Alec and Lauren Financial Investments, LLC ("A & L"), a Missouri limited liability company, to assist him in halting the foreclosure of his home. Matlock is A & L's managing member. A & L, acting through Matlock, agreed to assist Appellant by purchasing the home from Appellant for $2,066.97 and selling it back to him for $9,857.04, plus interest. A & L hired Respondent Attorneys to draft the documents for the transaction. A & L, represented by Respondent Attorneys, later filed Prior Case for rent and possession, seeking to evict Appellant from the home for failing to pay the amount owed to A & L.

---

[1] *See* sections 407.935-.943. All statutory references are to RSMo Cum.Supp. 2014.

2

In that case, Appellant counterclaimed against A & L for violating the FCA and obtained a judgment against A & L on that claim.

Thereafter, Appellant filed this case against Respondents, alleging "Unlawful Foreclosure Consulting" by Matlock (Count 1) and "Accessory Liability" against Respondent Attorneys (Count 2). The first count of Appellant's Petition against Matlock alleges, among other matters:

> Greg Matlock, in the course [sic] scope of his agency for [A & L], represented that he could stop the foreclosure on [Appellant's] home, if [Appellant] borrowed 2066.97 from [A & L]. . . .
>
> . . . .
>
> Greg Matlock, in the course and scope of his agency for [A & L], performed foreclosure consulting services as defined by the Missouri Foreclosure Consultant Act. RSMo 407.935 et. Seq. Those services include planning a transaction to halt the foreclosure pending on [Appellant's] home, representing to [Appellant] that the transaction it planned and proposed would halt the foreclosure, having deeds and contracts drawn up, and appraisals made. Greg Matlock hired attorneys and a title company to aid him in planning the transaction, drawing up the contracts, performing the closing and to perfect [A & L]'s interest by ejecting [Appellant] from his home. . . .
>
> . . . .
>
> On March 3, 2017, the Court, in [Prior Case], found that, through actions of its agent Greg Matlock, that [A & L] acted as a foreclosure consultant, and violated the [sic] Rsmo 407.940 in "one or more" ways, finding for [Appellant] on Count II of his amended Counterclaim. As such Greg Matlock is a foreclosure consultant under Rsmo 407.935 and has performed an illegal and criminal act under Rsmo 407.940.

The second count of Appellant's Petition against Respondent Attorneys alleges, among other matters:

> Greg Matlock hired [Husch] to aid in providing foreclosure consulting services for [A & L]. Those services included planning the transaction and drafting the documents that evidence the September 12, 2014 transaction at issue here.

3

Defendant Cory L. Collins, in the course and scope of his employment with [Husch], planned and drafted the documentation for the transaction of September 12, 2014.

. . . .

Also on December 2, 2015, Ms. Shelly Rosenfelder, acting in the course and scope of her employment with [Husch], despite personally being put on notice that she was proceeding on a voided contract, aided Greg Matlock and [A & L], by ejecting [Appellant] from his home, thereby perfecting [A & L]'s unlawful interest in [Appellant's] home in [Prior Case].

. . . .

While attorneys are exempted from the [FCA], they may not help others violate the act. Per Rsmo 562.046. "It is no defense to any prosecution for an offense in which the criminal responsibility of the defendant is based upon the conduct of another that … (2) The defendant does not belong to that class of persons who was legally capable of committing the offense in an individual capacity."

For aiding [A & L] by planning the transaction, executing the transaction, and ultimately perfecting [A & L']s unlawful interest by ejecting [Appellant] from his home, [Respondent Attorneys] are all liable to [Appellant] by operation of RSMo 562.041 as accessories to the acts of [A & L] and Greg Matlock, and are jointly and severally liable to [Appellant] with [A & L] and Greg Matlock.

Respondent Attorneys filed a motion to dismiss Appellant's petition. In their motion, they contend that Appellant's claim against them should be dismissed because it fails to state a claim for which relief could be granted for three reasons: (1) the claim was precluded by Prior Case (referred to as the "rule against splitting causes of action[2] and the doctrine of res judicata"); (2) section 562.041 is a criminal statute and does not give rise to a private civil claim (referred to as lack of "standing"); and (3) "absent exceptional circumstances, an attorney is not liable for an injury to a nonclient arising out of the representation of the client[.]" As to the last reason, the motion further asserts that

---

[2] In its judgment, the trial court rejected the "splitting causes of action" defense stating that it "only applies to actions involving the same parties[,]" and citing *Lee v. Guettler*, 391 S.W.3d 311,313 (Mo. 1965) in support of that proposition.

Appellant's petition does not "allege any conduct constituting the exceptional circumstances that would allow [Appellant] to assert a claim against them."

Matlock also filed a motion to dismiss, claiming that Appellant's claim against him was barred by Prior Case and the application of "the rule against splitting causes of action[3] and the doctrine of res judicata" and that Appellant "does not have standing or authority to assert claims of criminal liability."

The trial court thereafter entered judgment sustaining Respondents' motions to dismiss on the grounds that Appellant's claims were litigated in Prior Case and, therefore, Appellant was precluded from litigating those claims in this case and that Appellant "cannot state a claim against [Respondents] because it is well established that attorneys are not liable to third parties for actions taken during the course of representation." Within thirty days thereafter, Appellant filed a motion to set aside the judgment and for leave to file an amended petition. The trial court denied both motions, and this appeal timely followed. Additional facts, as required and related to particular points, will be set out in our discussion of Appellant's points relied on.

## Standard of Review and Applicable Legal Principles

A motion to dismiss for failure to state a cause of action is solely a test of the adequacy of the plaintiff's petition. It assumes that all of plaintiff's averments are true, and liberally grants to plaintiff all reasonable inferences therefrom. No attempt is made to weigh any facts alleged as to whether they are credible or persuasive. Instead, the petition is reviewed in an almost academic manner, to determine if the facts alleged meet the elements of a recognized cause of action, or of a cause that might be adopted in that case.

---

[3] *See* fn. 2.

*Bosch v. St. Louis Healthcare Network*, 41 S.W.3d 462, 464 (Mo. banc 2001) (quoting

*Nazeri v. Missouri Valley College*, 860 S.W.2d 303, 306 (Mo. banc 1993) (internal

citations omitted)).

## Discussion

For ease of analysis, we address Appellant's points out of order.

### Dismissal of Count Two against Respondent Attorneys

In his fourth point, Appellant claims the trial court erred in dismissing his claim

against Respondent Attorneys because the second count in his petition against them

pleaded an "exceptional act" exception to the general rule that "lawyers are not liable to

third parties for the acts of their clients or for the actions of the lawyer in the ordinary

course of the practice of law."

Generally, an attorney is not liable to a third party who is not his or her client

because the attorney is not in an attorney-client relationship with the third party." *Roth*

*v. La Societe Anonyme Turbomeca France*, 120 S.W.3d 764, 776 (Mo.App. 2003)

(citing *Macke Laundry Serv. Ltd. P'ship v. Jetz Serv. Co., Inc.*, 931 S.W.2d 166, 176–

77 (Mo.App. 1996)). This general rule arises out of "the attorney's fiduciary duty to the

client, and the public policy that attorneys be able to discharge that duty by freely using

those procedures that are necessary to competently represent their clients unfettered by

fear of personal liability." *Macke*, 931 S.W.2d at 177.

One exception to this general rule, which has come to be known as the

"exceptional circumstances" rule, are cases involving fraud, collusion, or malicious or

tortious acts by the attorney. *Donahue v. Shughart, Thomson & Kilroy, P.C.*, 900

S.W.2d 624, 627 (Mo. banc 1995); *Macke*, 931 S.W.2d at 177. "Although the rule states

that an attorney may be liable to a nonclient when the attorney has committed a 'tortious

6

act,' not all tortious conduct is encompassed by the rule. The rule is limited to intentional torts." *Macke*, 931 S.W.2d at 178 (citing *Mark Twain Kansas City v. Jackson*, 912 S.W.2d 536, 538 (Mo.App.1995)). Because "the client's misconduct cannot be imputed to the attorney[,]" *Macke*, 931 S.W.2d at 176 (citing *Henderson v. Cape Trading Co.*, 316 Mo. 384, 289 S.W. 332, 335 (1926)), this rule necessarily focuses only upon the attorney's conduct.

The second count of Appellant's petition alleges that Respondent Attorneys conducted themselves in two respects: first, they "planned and drafted the documentation for the transaction of September 12, 2014[,]" and, second, they represented their client in court "by ejecting [Appellant] from his home[,]" while on notice from Appellant that Appellant claimed that the underlying contract was void. The petition does not allege any other conduct by Respondent Attorneys.

Liberally granting Appellant all reasonable inferences from these allegations, *see Bosch*, 41 S.W.3d at 464; *Nazeri,* 860 S.W.2d at 306, they support only that Respondent Attorneys provided legal services in the course of representing their client—planning and drafting legal documents, appearing in court proceedings, and receiving legal contentions from opposing parties. These allegations fall well short of supporting any claim that Respondent Attorneys engaged in any fraud, collusion, or malicious or tortious acts such that their conduct would fall within the "exceptional circumstances" rule.

Appellant's argument under this point is faulty in two respects. First, without citation to any supporting legal authority, Appellant imputes Matlock's alleged misconduct to Respondent Attorneys. Second, premised upon Matlock's imputed misconduct, Appellant speculates, untethered to any allegations in the petition, as to the

7

state of mind of Respondent Attorneys while performing the alleged legal services for their client.  Neither premise has any merit.  Matlock's alleged misconduct, as previously noted, cannot be imputed to Respondent Attorneys, *Macke*, 931 S.W.2d at 176, and there are no factual allegations in the petition as to what the Respondent Attorneys knew or should have known while engaging in their alleged conduct in providing legal representation to Matlock.

Appellant's reliance on *White v. McCoy Land Co.*, 101 S.W.2d 763 (Mo.App. 1936), *aff'd* *White v. Scarritt*, 341 Mo. 1004, 111 S.W.2d 18 (1937), and *Kennedy v. Kennedy*, 819 S.W.2d 406 (Mo.App. 1991), is misplaced.  Appellant describes both cases by quoting the following from *Macke*:

> In *White v. McCoy Land Co.*, 101 S.W.2d at 766, an attorney, who was guilty of fraudulent acts and representations, was held liable for instituting a suit when the attorney knew his client's claim had no merit and that the suit was being instituted in bad faith for the purpose of compelling payment from the defendant.  The exceptional circumstances rule was also utilized in *Kennedy*, 819 S.W.2d at 410, to find that the nonclient plaintiffs stated a cause of action for tortious interference with a business relationship and slander of title where the plaintiffs pled that the attorney maliciously published false representations which the attorney knew or should have known were false.

*Macke*, 931 S.W.2d at 177–78.  Appellant omits and fails to consider, however, that the defendant attorney in *White* was a director and the president of his client, McCoy Land Company; that he owned 25% of the stock of the company; that he and his brother owned a little over 50% of the stock in the company; and that, in addition to the fees his law firm received in representing McCoy Land Company in the underlying case at issue, he also received compensation from the company as its president "for devot[ing] himself assiduously to the services of the company in investigation . . . [and] closing up the settlement of said case."  *White*, 101 S.W.2d at 764.  Here, there are no allegations in

8

Appellant's petition that Respondent Attorneys' alleged conduct occurred for any reason other than in their role as an attorney representing their client.

*Kennedy* is also easily distinguishable. Here, unlike in *Kennedy*, there are no factual allegations in Appellant's petition supporting that any of Respondent Attorneys' alleged conduct was malicious or involved any representations that they knew or should have known were false.

In its judgment, the trial court determined that Appellant's petition "fails to sufficiently allege any conduct of [Respondent] Attorneys[] constituting exceptional circumstances." For the above reasons, Appellant's fourth point and supporting argument fail to demonstrate otherwise and, therefore, the point is denied.[4]

### Denial of Motion to Amend Petition

Appellant's fifth point asserts that the trial court abused its discretion in denying him "leave to amend" to assert additional claims against Respondent Attorneys. We disagree.

Appellant filed his initial petition on August 9, 2017. Respondent Attorneys filed their motion to dismiss challenging the adequacy of count two of Appellant's petition on September 11, 2017. Fifteen months later, after repeated briefing[5] and argument by the parties, the trial court entered its judgment on December 14, 2018, dismissing count two of Appellant's petition as to Respondent Attorneys. Thirty days after that, on January 13,

---

[4] Because the trial court's judgment dismissing the second count of Appellant's petition against the Respondent Attorneys is independently supported on this basis, we need not consider whether it is supported on any other basis as challenged in Appellant's first three points.

[5] Appellant filed a response to the motion to dismiss on December 11, 2017, in which he discusses Respondent Attorneys' liability as "civil conspirators." In his brief on appeal, Appellant now characterizes this discussion as his "[offer] to amend his petition to include a claim of civil conspiracy[.]" Appellant directs us to nothing in that document, however, that mentions the amendment of Appellant's initial petition or that in any manner can be construed as a request by Appellant for leave to file an amended petition. Similarly, Appellant points us to nothing in the record on appeal where he ever sought any ruling from the trial court on this response other than the denial of Respondent Attorneys' motion to dismiss.

2019, Appellant filed a motion for leave to file an amended petition. He attached to that motion his proposed first amended petition, which purported to assert two additional claims against Respondent Attorneys—civil conspiracy (count 4) and legal malpractice (count 5).[6] Thereafter, the trial court denied Appellant's motion for leave to file an amended petition.

> Rule 67.06 provides that "[o]n sustaining a motion to dismiss a claim . . . the court shall freely grant leave to amend." Similarly, Rule 55.33(a) states that "leave [to amend] shall be freely given when justice so requires."[7] While both rules stress granting amendments to pleadings liberally, they do not confer an absolute right to file even a first amended petition. Denial of leave to amend is within the sound discretion of the trial court, and its decision will not be disturbed unless there is a showing that such court palpably and obviously abused its discretion. Judicial discretion is abused when the court's ruling is clearly against the logic of the circumstances presented to the court and is so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration.

*Moore v. Firstar Bank*, 96 S.W.3d 898, 903–04 (Mo.App. 2003) (internal case quotations and citations omitted); *see also* *Dibrill v. Normandy Assocs., Inc.*, 383 S.W.3d 77, 92 (Mo.App. 2012); *Tisch v. DST Sys., Inc.*, 368 S.W.3d 245, 257 (Mo.App. 2012).

> The recognized purpose of allowing amendments to pleadings is to allow a party to present evidence that was overlooked or unknown when the original pleading was filed without changing the original cause of action. Appellate courts have found no abuse of discretion in denying the amended pleadings of parties who fail to show the pleadings include any facts that were unknown when the original pleading was filed.

*Moore*, 96 S.W.3d at 904.

---

[6] Count three in both Appellant's initial petition and in his proposed first amended petition seeks no relief against Respondent Attorneys or Matlock.
[7] The provisions quoted from Rules 67.06 and 55.33(a) have not changed since that time. All rule references are to Missouri Court Rules (2019), unless otherwise indicated.

Here, Appellant's proposed first amended petition purports to assert two additional legal theories of liability against Respondent Attorneys—civil conspiracy and legal malpractice. Yet, these additional legal theories are premised entirely on the factual allegations of Respondent Attorneys' conduct contained in Appellant's initial petition. Appellant did not assert or demonstrate to the trial court that his proposed first amended petition presents any factual allegations about Respondent Attorneys' conduct that were overlooked or unknown to him when he filed his initial petition. Also, Appellant failed to proffer to the trial court any reason why these proposed additional theories of liability were not included in his initial petition. In the absence of Appellant providing this critical information to the trial court, we cannot say that the trial court abused its discretion in denying him leave to file his first amended petition. *See Dibrill*, 383 S.W.3d at 92; *Tisch*, 368 S.W.3d at 258; *Moore*, 96 S.W.3d at 904.

Moreover, the trial court's denial of leave to amend the petition is buttressed by Appellant's lack of timeliness in seeking such leave. First, as previously noted, Appellant failed to offer the trial court any reason why these additional legal theories against Respondent Attorneys could not have been included in his initial petition.

Second, Appellant failed to offer to the trial court any explanation as to why he did not seek to amend his petition during the fifteen months between the filing of Respondent Attorneys' motion to dismiss and the entry of the trial court's judgment. As demonstrated by Appellant's argument on December 11, 2017, in his response to the motion to dismiss—over twelve months before entry of the trial court's judgment—Appellant was well aware of his potential claims of civil conspiracy and malpractice

11

against Respondent Attorneys. In that response, Appellant argued that Respondent Attorneys were "civil conspirators" and that Collins had "committed malpractice."

Third, Appellant first sought leave to amend his petition only *after* both extended and repeated briefing and argument to the trial court and the trial court's entry of the judgment dismissing his petition. "'Our liberal amendment rules are not meant to be employed as a stratagem of litigation. Rather, the purpose of the grant of an amendment is to allow a party to assert a matter unknown or neglected from inadvertence at the time of the original pleading.'" *Tisch*, 368 S.W.3d at 258 (quoting with citations omitted *Kenley v. J.E. Jones Constr. Co.*, 870 S.W.2d 494, 498 (Mo.App. 1994)).

In the above context, Appellant has failed to demonstrate that the trial court's denial of his motion to amend his petition was clearly against the logic of the circumstances presented to the trial court or was so unreasonable and arbitrary that it shocks the sense of justice and indicates a lack of careful, deliberate consideration. *See Moore*, 96 S.W.3d at 903–04. Appellant's fifth point is denied.

### Dismissal of Count One against Matlock

#### Lack of Standing

Appellant's third point challenges the dismissal of his FCA claim against Matlock under count one of his petition for lack of standing. This point has merit.

In Matlock's motion to dismiss, Matlock contends that Appellant "does not have standing or authority to assert claims of criminal liability and his counsel does not have authority to prosecute such claims."[8]

---

[8] The trial court's judgment is not the model of clarity. Matlock has not directed us to any place in it where the trial court addresses or relies upon in any manner Matlock's lack of standing claim as asserted in his motion to dismiss to support the dismissal of count one of Appellant's petition and his claim against Matlock.

Matlock ignores and fails to address, however, that section 407.943 provides an owner, as defined by section 407.935(3), a private civil cause of action for a FCA violation by a person.[9] Rather, Matlock apparently exclusively focuses upon Appellant's three references in count one of his petition to section 407.940.2 that provides that "[a]ny violation of any of the acts enumerated in subsection 1 of this section shall be a class A misdemeanor." These references, however, are irrelevant and superfluous as to whether count one of Appellant's petition states a claim against Matlock under section 407.943 and do not in any manner negate a claim so stated. Appellant asserts that count one of his petition states a section 407.943 claim against Matlock for a FCA violation and we note that his prayer for relief under that count mirrors the relief provided in that statute. Matlock has never demonstrated otherwise.

For the above reason, Appellant's third point directed to the dismissal of count one of his petition against Matlock for lack of standing is granted.

*Res Judicata (Claim Preclusion)[10]*

Appellant's first and second points challenge the trial court's dismissal of count

---

While Matlock filed a respondent's brief on appeal, he chose to address only his res judicata claim asserted in his motion to dismiss and makes no mention of his lack of standing claim asserted in that motion. A respondent is not required to file a brief on any issue, but without one on a particular issue, we must adjudicate any claim of error related to that issue without benefit of whatever argument the respondent might have presented. *Turner v. Missouri Dept. of Conservation*, 349 S.W.3d 434, 438 (Mo.App. 2011).

[9] Section 407.943 provides:

> 1. An owner may bring an action against a foreclosure consultant for any violation of sections 407.935 to 407.943. Judgment shall be entered for actual damages, reasonable attorneys' fees and costs, and appropriate equitable relief. The court also may, in its discretion, award exemplary damages equivalent to at least twice the compensation received by the foreclosure consultant in violation of section 407.940, in addition to any other award of actual damages.
> 2. The rights and remedies provided in subsection 1 of this section are cumulative to, and not a limitation of, any other rights and remedies provided by law. Any action brought pursuant to this section shall be commenced within three years from the date of the alleged violation.

[10] The term "res judicata" is sometimes referred to as "claim preclusion" and *vice versa*. Traditionally, claim preclusion bars the same parties or their privities from relitigating the same cause of action. *Am. Polled Hereford Ass'n v. City of Kansas City*, 626 S.W.2d 237, 241 (Mo. 1982).

one of his petition against Matlock as precluded by the doctrine of res judicata. As a prerequisite to addressing that issue, however, we must first address whether the procedural posture of the case provided factual support for the trial court's consideration and resolution of that legal issue. We determine that it did not. *See Warren v. Paragon Techs. Group, Inc.*, 950 S.W.2d 844, 845 (Mo. banc 1997) (court can reach legal question only after the parties comply with the applicable pleading and evidence requirements).

Res judicata is an affirmative defense that must be raised in a responsive pleading along with "a short and plain statement of the facts showing that the pleader is entitled to the defense[.]" Rule 55.08; *see* Rule 55.01 (requiring a petition, an answer, and the pleading of an affirmative avoidance). Rule 55.27 requires that every defense must be asserted in the responsive pleading, except for eleven listed defenses that optionally may be made by motion. The res judicata defense is not included in the listed exceptions. Rule 55.27. Matlock has not filed a responsive pleading in this case.

A very narrow and limited exception to the pleading requirement exists, however, "whereby a defendant may properly file a motion to dismiss for failure to state a claim under Rule 55.27(a)(6) when it appears from the face of the petition that an affirmative defense is applicable." *Evans v. Empire Dist. Elec. Co.*, 346 S.W.3d 313, 317 (Mo.App.2011).

Our supreme court has also held that "while not expressly stated in the Rule, [the defense] of res judicata . . . [is] in essence [a defense] alleging the plaintiff has failed to state a claim upon which relief may be granted." *King Gen. Contractors, Inc. v. Reorganized Church of Jesus Christ of Latter Day Saints*, 821 S.W.2d 495, 498 (Mo.

banc 1991). Such defense, however, "may succeed only if uncontroverted facts demonstrate the present suit is groundless[.]" *Id.* at 498-99 (citing *Johnson v. Raban*, 702 S.W.2d 134, 136 (Mo.App. 1985)).

Rule 55.27(a) further provides that

[i]f, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment *and disposed of as provided in Rule 74.04*. All parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 74.04.

Rule 55.27(a) (emphasis added). Here, the parties presented to the trial court extensive materials from Prior Case that included filed documents and also transcripts of hearings held. None of the factual information in these materials was included as factual allegations in Appellant's petition. Matters outside the pleadings, therefore, were presented to and not excluded by the trial court. Nothing in the record, however, indicates that the trial court advised the parties that it was treating Matlock's motion to dismiss as one for summary judgment or that it would dispose of it as provided in Rule 74.04. Similarly, and perhaps most significantly, nothing in the record indicates that the trial court required or gave the parties the opportunity to file statements of uncontroverted material facts as required by Rule 74.04(c)(1) or as allowed by Rule 74.04(c)(2) and supported in the manner as required by those rules.

"Facts come into a summary judgment record only per Rule 74.04(c)(1) and (2), that is, in the form of a pleading containing separately numbered paragraphs and a response addressed to those numbered paragraphs." *Lackey v. Iberia R-V Sch. Dist.*, 487 S.W.3d 57, 60–61 (Mo.App. 2016) (internal quotation marks omitted). "A trial court grants or denies summary judgment based on facts established by the summary judgment

15

motion and responses thereto; our review is confined to the same facts and does not extend to the entire record before the trial court." *Id.* at 60.

The omission of a Rule 74.04 summary judgment record is a critical deficiency in the legal posture of this case that renders appellate review impossible. *See Energy Creates Energy, LLC v. Heritage Group*, 504 S.W.3d 142, 150 (Mo.App. 2016) (conversion of motion to dismiss to motion for summary judgment without complying with procedural requirements of Rule 74.04 renders appellate review impossible). A trial court's grant of summary judgment is reviewed *de novo. ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). If no genuine issue of material fact exists and the movant is entitled to judgment as a matter of law, the trial court's decision will be affirmed. *Id.* at 377. The trial court record before us, sans a summary judgement record developed in accordance with Rule 74.04 requirements, does not allow us to review the material facts for the existence of genuine issues as contemplated under the Rule 74.04 summary judgment rubric.

This is so because in addressing the applicability of the asserted res judicata defense, the trial court made findings of fact in its judgment as to the order of filing of certain documents in Prior Case that were filed on the same date and, more importantly, the Prior Case trial court's awareness of those documents at a particular time on that date when making a relevant ruling. These facts were not established by a summary judgment record, i.e., the "separately numbered paragraphs" and responses per Rule 74.04(c). We, therefore, cannot determine whether they are uncontroverted facts as is required to uphold the trial court's judgment. *See King Gen. Contractors, Inc.*, 821 S.W.2d at 498-99 (res judicata asserted in motion to dismiss considered by trial court as motion for

16

summary judgment "may succeed only if uncontroverted facts demonstrate the present suit is groundless.").

Accordingly, on the factual basis relied upon by the trial court in its judgment to apply res judicata to dismiss Appellant's claim in count one of his petition against Matlock, we grant Appellant's first and second points. Absent any other basis upon which to affirm the trial court's judgment, the grant of these points would require reversal of the trial court's judgment dismissing count one of Appellant's petition against Matlock and remand for further proceedings consistent with this opinion.

On appeal, however, Matlock asserts that the trial court's judgment, nevertheless, should be affirmed on a different application of res judicata other than that presented to and decided by the trial court in its judgment. In his brief, Matlock asserts that "[b]y electing to take the claim against [A & L] to final judgment, Appellant is precluded from pursuing the instant action against Matlock by virtue of *res judicata*." In other words, Matlock claims that the mere existence of the Prior Case judgment in Appellant's favor and against A & L, Matlock's principal, as alleged in Appellant's petition, precludes Appellant's claim against him as A & L's agent in this case arising out of the same transaction.

Matlock contends that "[a]s held in **Barkley v Carter Cnty. State Bank**, 791 S.W.2d 906, 914 (Mo.App. 1990) (citing Restatement (Second) of Judgments § 51), when a relationship between two persons exist such that one is vicariously responsible for the conduct of the other, there is privity for res judicata purposes." As additional support for his contention, Matlock also relies upon **Topchian v. JP Morgan Chase Bank, N.A.**, 539 S.W.3d 879 (Mo.App. 2017). Matlock's reliance on these cited materials, however,

17

is misplaced.

The general rule is that "[w]hen two defendants are potentially liable for the same loss, the claims are considered separate and two suits can be maintained against the differing parties." *Lauber-Clayton, LLC v. Novus Props. Co.*, 407 S.W.3d 612, 620 (Mo.App. 2013) (quoting *Hollida v. Hollida*, 190 S.W.3d 550, 556 (Mo.App. 2006) (citing Restatement (Second) of Judgments § 49)). Both *Lauber-Clayton, LLC* and *Hollida* rely upon and recite from comment a to Restatement (Second) of Judgments § 49 (1982), which provides:

> When a person suffers injury as the result of the concurrent or consecutive acts of two or more persons, he has a claim against each of them. If he brings an action against one of them, he is required to present all the evidence and theories of recovery that might be advanced in support of the claim against that obligor. . . . If he recovers judgment, his claim is 'merged' in the judgment so that he may not bring another action on the claim against the obligor whom he has sued. . . . Correlatively, if judgment is rendered against him, he is barred from bringing a subsequent action against the obligor. . . . But the claim against others who are liable for the same harm is regarded as separate. Accordingly, a judgment for or against one obligor does not result in merger or bar of the claim that the injured party may have against another obligor.

*Lauber-Clayton, LLC*, 407 S.W.3d at 620; *Hollida*, 190 S.W.3d at 556. The injured party's right to maintain separate actions against multiple obligors, however, is subject to constraints. Restatement (Second) of Judgments § 49 cmt a (1982).

One such constraint is identified in Restatement (Second) of Judgments § 51 (1982), which provides:

> If two persons have a relationship such that one of them is vicariously responsible for the conduct of the other, and an action is brought by the injured person against one of them, the judgment in the action has the following preclusive effects against the injured person in a subsequent action against the other.

(1) A judgment *against* the injured person that bars him from reasserting his claim against the defendant in the first action extinguishes any claim he has against the other person responsible for the conduct unless:

> (a) The claim asserted in the second action is based upon grounds that could not have been asserted against the defendant in the first action; or

> (b) The judgment in the first action was based on a defense that was personal to the defendant in the first action.

(2) A judgment in *favor* of the injured person is conclusive upon him as to the amount of his damages, unless:

> (a) There were limitations on the competence of the forum in the first action preventing him from obtaining the full measure of his damages, as stated in § 26(1)(c), or he exercised the option stated in § 26(1)(e) to divide his claim; or

> (b) Different rules govern the measure of damages in the two actions.

(3) If the action is brought against the primary obligor and judgment is *against* the injured person, it extinguishes the claim against the person vicariously responsible if under applicable law the latter is an indemnitor whose liability arises only when the primary obligor is found liable to the injured person.

(4) A judgment *by consent for or against* the injured person does not extinguish his claim against the person not sued in the first action except:

> (a) In the circumstances stated in Subsection (3); and

> (b) To the extent stated in § 50.

Restatement (Second) of Judgments § 51 (1982) (emphasis added).

In **Barkley**, this court relied upon subsection (1) of Restatement (Second) of Judgments § 51 (1982) to hold that a judgment *against* Barkley, the injured party, in a prior case he brought against a bank precluded the subsequent case by Barkley against an officer of that bank for actions taken in that capacity. **Barkley**, 791 S.W.2d at 914–15. Because the Prior Case judgment here is in *favor* of Appellant, however, neither **Barkley** nor subsection (1) of Restatement (Second) of Judgments § 51 (1982), as applied in

19

*Barkley*, provide any basis for Matlock's contention that the Prior Case judgment in favor of Appellant precludes Appellant's claim against him in this case.

'''Matlock's reliance upon *Topchian* is also unavailing. Matlock ignores that the Western District of our court in that case expressly analyzed the claims before it "under federal res judicata law as interpreted by the United States Court of Appeals for the First Circuit." *Topchian*, 539 S.W.3d at 889–90. Matlock fails to provide any citation to relevant Missouri legal authority supporting that Missouri's law on the claims addressed in *Topchian* is the same as the foreign law applied by the court in that case. In the absence of citation to relevant Missouri legal authority making that connection, we cannot conclude that *Topchian* provides any basis for Matlock's contention that the Prior Case judgment in favor of Appellant precludes Appellant's claim against him in this case.

## Decision

The trial court's judgment dismissing count two of Appellant's petition against Respondent Attorneys is affirmed. The trial court's judgment dismissing count one of Appellant's petition against Matlock is reversed, and the case is remanded to the trial court for further proceedings on that count consistent with this opinion.

GARY W. LYNCH, P.J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS