Dorothy A. JOHNSON, Plaintiff–
Respondent,

v.

RIVAL MANUFACTURING COMPANY,
Defendant–Appellant.

No. WD 43743.

Missouri Court of Appeals,
Western District.

June 25, 1991.

Motion for Rehearing and/or Transfer to
Supreme Court Denied July 30, 1991.

Application to Transfer Denied
Sept. 10, 1991.

Kirk T. May, Frank F. Sallee, Stinson, Mag & Fizzell, Kansas City, for defendant-appellant.

Michael W. Manners, Paden, Welch, Martin & Albano, Independence, J. Kirk Rahm, Rahm, Rahm, Koenig & Courtwright, Warrensburg, for plaintiff-respondent.

Before LOWENSTEIN, P.J., and TURNAGE and FENNER, JJ.

TURNAGE, Judge.

Dorothy Johnson filed suit against Rival Manufacturing Company for its failure to give her a service letter pursuant to § 290.140, RSMo 1986. The court entered judgment on a jury verdict awarding Johnson one dollar in actual damages and $180,000.00 in punitive damages. Rival appeals and contends the court should have sustained its motion for judgment notwithstanding the verdict. Affirmed as to actual damages and reversed as to punitive damages.

Johnson began work for Rival at its plant in Warrensburg, Missouri, in November, 1986. Shortly after Johnson began work she was transferred to a department under the supervision of Randy Vaughn. In that department Johnson was required to do various assembly type jobs. The last job she worked on for Vaughn was on a bracket press. This machine resembles a phonograph turntable and is controlled by two operators. One operator presses parts on a bracket positioned on the turntable which then rotates to the next position so that the other operator can press other parts on the bracket. The parts include small bearings dipped in grease which the operator has to place on a wick and press down. The standard or quota for the bracket press was 586 brackets per hour per operator.

Prior to her assignment to the bracket press Johnson had been off work because of wrist problems. On April 14, 1987, the company physician permitted Johnson to return to work beginning on April 20, 1987 so long as she did no lifting or excessive pulling or pushing with the wrist. On April 20, 1987, Johnson returned to work on the bracket press. On April 22, 1987, she was working with a very experienced person on the press and Johnson could not maintain the speed which the experienced operator established.

On that day Johnson became upset and frustrated. Johnson testified that she told Vaughn that her work on the bracket press was hurting her arm because it was going so fast and asked if he could put her on some other light duty work. She said Vaughn told her that he did not have any other light duty and she might as well go home. Johnson says that she was very upset with Vaughn and does not remember exactly what she said during her conversation with him before she left the plant to go home early.

In her direct examination Johnson was asked:

Q. And if you said that he could take that job and shove it, were you talking about quitting your job generally or were you talking about the problem with the bracket machine?

A. No, sir, I was talking about the problem with the bracket machine.

Johnson stated that she was off work until August 5, 1988. While she was off Johnson had surgery for carpal tunnel syndrome. On August 5, 1988, Johnson returned to the Rival plant and went into Vaughn's office and gave him her medical release for return to work. Johnson said that Vaughn looked at the papers and told her that she did not have a job and walked out.

On November 14, 1988, Johnson had a lawyer prepare a letter to Rival which requested a service letter pursuant to § 290.140. On December 7, 1988, William Yager, Vice President of Rival, sent the following letter to Johnson:

I am writing in response to your letter dated November 14, 1988 in which you requested a letter, pursuant to § 290.240 RSMo. (1986), relating to your employment with Rival Manufacturing Company.

Company records reflect that you were last employed by the Company on April 22, 1987. Accordingly, please be advised that you are not entitled to a letter pursuant to § 290.140 RSMo, since you did not timely request such a letter "within a reasonable time but not later than one year following the date of (your) discharge or voluntary quit."

If you have information contrary to the above, please let me know.

After receiving Rival's response Johnson filed suit alleging a violation of § 290.140 for failing to issue a service letter and sought one dollar in nominal damages and punitive damages.

Rival contends the court should have granted its judgment n.o.v. and contends that it did not fail to respond to Johnson's request for a service letter and, therefore, is not liable for punitive damages. Rival contends the letter that it sent Johnson addressed the duration of Johnson's employment by stating the date on which her employment had terminated. However, Rival's position that it did not fail to give Johnson a service letter is refuted by the letter which it sent. The letter clearly stated that Johnson was not entitled to a service letter because she did not make a timely request by requesting a letter within a reasonable time but no later than one year following the date of her discharge or voluntary termination.

■ Having adopted the theory at trial that it was not giving Johnson a service letter because her request was untimely, Rival will not be heard to contend now that it did give her such a letter. A party is bound by the theory advanced at trial and may not change that theory on appeal.

*Brinkerhoff Land & Livestock v. Doyle*, 778 S.W.2d 336, 339[4] (Mo.App.1989).

The principal issue tried was the question of whether Johnson made a timely request for a service letter. This depended on whether she voluntarily quit on April 22, 1987, or whether she was fired on August 5, 1988. Johnson's position was that even if she told Vaughn on April 22, 1987, that he could "take this job and shove it," she was referring to the problem of the bracket machine and did not mean that she was resigning as an employee. It was her position that she remained an employee until she was fired August 5, 1988, when she returned to Rival with her release to work papers but was told by Vaughn that she did not have a job. Rival took the position that Johnson quit on April 22, 1987, when she told Vaughn to "take this job and shove it" and left the plant. Rival introduced a memo which Vaughn wrote following the April 22, 1987 incident stating that Johnson quit and told Vaughn he could "take this job and shove it." It also introduced a letter Vaughn wrote to an insurance company handling Johnson's workers' compensation claim on July 16, 1987, in which he stated that Johnson had quit on April 22, 1987. Rival also introduced other records from Johnson's personnel file such as the fact that she was not paid after April 22, 1987, in an effort to prove that she quit on that date.

Rival took the position at trial that because Johnson had quit on April 22, 1987, her request for a service letter on November 14, 1988, was not sent within one year of the date she quit as required by § 290.-140.1. The issue was submitted to the jury by an instruction which told the jury that in order to find for Johnson it must find that Johnson had requested a letter within one year after her employment was terminated and that Rival did not issue such a letter. By finding in favor of Johnson the jury found that she made the request for a service letter within one year from the termination of her employment.[1]

---

1. Rival contends there was no evidence to support a finding that Johnson made a timely request for a letter. Rival argues its evidence, however, the jury was entitled to believe Johnson's explanation. Her explanation that she did not quit on April 22, 1987, but was fired on August 5, 1988, was sufficient evidence to support a finding that her request was timely.

Johnson did not prove actual damages and does not contend on this appeal that she is entitled to any more than nominal damages. The judgment for one dollar in nominal damages is affirmed.

■ Rival contends that the award of punitive damages is not supported by the evidence. The parties agree that the conduct which Johnson was required to show in order to be entitled to an award of punitive damages is defined by *Burnett v. Griffith*, 769 S.W.2d 780 (Mo. banc 1989). In *Burnett*, the court held that punitive damages requires conduct which was outrageous because of the defendant's evil motive or reckless indifference to the rights of others. *Id.* at 789[12]. The court further held that it is not so much the commission of an intentional tort as the conduct which prompted its commission that forms the basis for a punitive damage award. *Id.* at 787[10]. The court stated "[p]laintiff must prove that defendant's evil hand was guided by an evil mind." *Id.*

The question becomes whether the evidence is sufficient to show that Rival's failure to respond to Johnson's request for a service letter constituted outrageous conduct because of Rival's evil motive or reckless indifference to the rights of Johnson.

■ In reviewing the evidence to determine whether Johnson proved outrageous conduct so as to be entitled to punitive damages, this court considers the evidence in the light most favorable to Johnson. *Id.* at 790[13].

■ Johnson does not point to any evidence introduced by her which would meet her burden of proof. Rather, Johnson seeks to sustain her burden by drawing inferences from Rival's evidence. Johnson first contends that the jury found that Johnson made her request for a service letter within one year after her termination and therefore, the jury must have found that Vaughn was lying when he testified that Johnson quit on April 22, 1987. Johnson argues from this premise that malice

can be inferred on the part of Vaughn because he lied about Johnson quitting on that date.

In *Smith v. Seven–Eleven, Inc.*, 430 S.W.2d 764, 769[4] (Mo.App.1968), the court defined inference as follows:

An inference is a deduction logically and properly drawn by reason from proven or admitted facts. It is more than, and cannot be predicated on, mere surmise or conjecture, i.e., " 'the possibility that a thing could have happened.... an idea or a notion founded on the probability that a thing may have occurred....' " (citations omitted) An inference may not be forced, and guesswork does not constitute an allowable substitute.

To infer from the jury's verdict that it found that Vaughn was lying when he said that Johnson quit on April 22, 1987, is nothing more than surmise or conjecture. As set out above, Johnson implicitly admitted that she stated on April 22, 1987, that Vaughn could "take this job and shove it." Johnson explained that she was referring to the job on the bracket press and not that she was quitting her job with Rival. The verdict does not necessarily reflect the jury's assessment of Vaughn's veracity. The jury could have believed the explanation of Johnson that she was referring to the specific job and not her job generally and could have simply felt that Vaughn misinterpreted Johnson's statement. An inference that the jury believed that Vaughn was lying does not logically and properly follow from the facts but is based on surmise and conjecture. Without the premise which Johnson seeks to establish that the jury found that Vaughn was lying, there is no need to explore the further inference that Johnson would draw that malice could be inferred on the part of Vaughn.[2] There is nothing in this argument which constitutes evidence which would show that Rival's conduct was outrageous.

---

2. Johnson contends that once the jury found Vaughn had lied that it could be inferred that Vaughn manufactured evidence by back dating his memo and letter to the insurance company.

It is argued that this would show malice. There is no evidence from which it could be properly inferred that Vaughn back dated any documents.

Johnson next contends that an answer which William Yager gave during his examination proves a motive for refusing to supply Johnson with a service letter. Yager stated that he was concerned that there could be more liability on the corporation if he responded to Johnson's request when he did not think he was required to respond because the request was not timely. Johnson contends this shows an evil motive for failing to respond because it shows Rival did not want to give the true reason that it discharged Johnson. This bit of evidence cannot supply the requisite proof which Johnson was required to produce. Rival was perfectly within its legal bounds in being concerned about possible liability for saying any more in the letter than it felt it was legally required to state.

Johnson also contends that the failure of Rival to give Johnson a letter after suit was filed proves its evil motive. In *Heuer v. John R. Thompson Co.*, 251 S.W.2d 980, 987[9–14] (Mo.App.1952), the court stated that the issuance of a tardy letter will only prevent the future accrual of damages after its delivery but would not destroy the cause of action. Rival cannot be faulted for failing to give Johnson a letter after suit was filed since that would not have extinguished Johnson's cause of action.

Johnson does not point to any other evidence either of her own or produced by Rival which would supply the necessary proof to sustain her burden. The inferences Johnson seeks to draw from Rival's evidence does not rise to the level of proof to show that Rival's conduct was outrageous. Failing to carry her burden of proof, the award of punitive damages must be reversed. *Stark v. American Bakeries Co.*, 647 S.W.2d 119, 126 (Mo. banc 1983).

The judgment awarding Johnson one dollar in nominal damages is affirmed. The judgment awarding Johnson $180,000.00 in punitive damages is reversed. Costs are divided between the parties equally.

All concur.